UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

MONROE DIVISION

| | | |
|---|---|---|
| **ELIZABETH R. TURNER-ANDERSON** | * | **CIVIL ACTION NO. 10-1393** |
| **VERSUS** | * | **JUDGE ROBERT G. JAMES** |
| **MICHAEL J. ASTRUE, COMMISSIONER, SOCIAL SECURITY ADMINISTRATION** | * | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Before the court is plaintiff's petition for review of the Commissioner's denial of social security disability benefits. The district court referred the matter to the undersigned United States Magistrate Judge for proposed findings of fact and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the reasons assigned below, it is recommended that the decision of the Commissioner be **AFFIRMED**, and this matter **DISMISSED** with prejudice.

**Background & Procedural History**

Elizabeth Turner-Anderson protectively filed the instant applications for Title II Disability Insurance Benefits and Title XVI Supplemental Security Income payments on February 14 and 28, 2007, respectively. *See* Tr. 12, 77-79, 85-92, 99.[1] She alleged disability as of January 31, 2006, because of her back, knee, heart, high blood pressure, bronchitis, cyst, eyes (glaucoma), neck, carpal tunnel syndrome, diabetes, and depression. (Tr. 93, 99, 104). The claims were denied at the initial stage of the administrative process. (Tr. 44-54). Thereafter, Turner-Anderson requested and received a September 11, 2008, hearing before an Administrative

---

[1] According to the ALJ, Turner-Anderson filed prior applications in 1983, 1991, 1992, 2000, and 2005. (Tr. 34).

Law Judge ("ALJ"). (Tr. 25-43). However, in a March 10, 2009, written decision, the ALJ determined that Turner-Anderson was not disabled under the Act, finding at Step Five of the sequential evaluation process that she was able to make an adjustment to work that exists in substantial numbers in the national economy. (Tr. 9-21). Turner-Anderson appealed the adverse decision to the Appeals Council. On October 28, 2009, however, the Appeals Council denied Turner-Anderson's request for review; thus the ALJ's decision became the final decision of the Commissioner. (Tr. 4-6).

On September 4, 2010, Turner-Anderson sought review before this court.[2] She contends that the ALJ's decision is not supported by substantial evidence and did not comport with relevant legal standards because Turner-Anderson was unrepresented at the administrative hearing, and the ALJ failed to fulfil his obligation to fully and fairly develop all of the relevant facts and information.

### Standard of Review

This court's standard of review is (1) whether substantial evidence of record supports the ALJ's determination, and (2) whether the decision comports with relevant legal standards. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). Where the Commissioner's decision is supported by substantial evidence, the findings therein are conclusive and must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's decision is not supported by substantial evidence when the decision is reached by applying improper legal standards. *Singletary v. Bowen*, 798 F.2d 818 (5th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v.*

---

[2] The Appeals Council granted plaintiff 60 days from receipt of its July 12, 2010, letter to file the instant civil action. (Tr. 1).

*Perales*, 402 U.S. at 401.  Substantial evidence lies somewhere between a scintilla and a preponderance.  *Muse v. Sullivan*, 925 F.2d 785, 789 (5th Cir. 1991).  A finding of no substantial evidence is proper when no credible medical findings or evidence support the ALJ's determination.  *Johnson v. Bowen*, 864 F.2d 340, 343-44 (5th Cir. 1988).  The reviewing court may not reweigh the evidence, try the issues *de novo*, or substitute its judgment for that of the Commissioner.  *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994) (citation omitted).

## Determination of Disability

Pursuant to the Social Security Act ("SSA"), individuals who contribute to the program throughout their lives are entitled to payment of insurance benefits if they suffer from a physical or mental disability.  *See* 42 U.S.C. § 423(a)(1)(D).  The SSA defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).  Based on a claimant's age, education, and work experience, the SSA utilizes a broad definition of substantial gainful employment that is not restricted by a claimant's previous form of work or the availability of other acceptable forms of work.  *See* 42 U.S.C. § 423(d)(2)(A).  Furthermore, a disability may be based on the combined effect of multiple impairments which, if considered individually, would not be of the requisite severity under the SSA.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

The Commissioner of the Social Security Administration has established a five-step sequential evaluation process that the agency uses to determine whether a claimant is disabled under the SSA.  *See* 20 C.F.R. §§ 404.1520, 416.920.  The steps are as follows,

(1)  An individual who is performing substantial gainful activity will not be found disabled regardless of medical findings.

> (2) An individual who does not have a "severe impairment" of the requisite duration will not be found disabled.
>
> (3) An individual whose impairment(s) meets or equals a listed impairment in [20 C.F.R. pt. 404, subpt. P, app. 1] will be considered disabled without the consideration of vocational factors.
>
> (4) If an individual's residual functional capacity is such that he or she can still perform past relevant work, then a finding of "not disabled" will be made.
>
> (5) If an individual is unable to perform past relevant work, then other factors including age, education, past work experience, and residual functional capacity must be considered to determine whether the individual can make an adjustment to other work in the economy.

*See, Boyd v. Apfel*, 239 F.3d 698, 704 -705 (5th Cir. 2001); 20 C.F.R. § 404.1520.

The claimant bears the burden of proving a disability under the first four steps of the analysis; under the fifth step, however, the Commissioner must show that the claimant is capable of performing work in the national economy and is therefore not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 146 n. 5 (1987). When a finding of "disabled" or "not disabled" may be made at any step, the process is terminated. *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If at any point during the five-step review the claimant is found to be disabled or not disabled, that finding is conclusive and terminates the analysis. *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

## Analysis

### I. Steps One, Two, and Three

The ALJ determined at Step One of the sequential evaluation process that Turner-Anderson had not engaged in substantial gainful activity during the relevant period. (Tr. 14). At Step Two, he found that Turner-Anderson suffers severe impairments of obesity, hypertension, diabetes mellitus, degenerative disc disease of the cervical and lumbar spine, and degenerative joint disease of the knees. *Id*. He concluded, however, that the impairments were not severe

enough to meet or medically equal any of the impairments listed in Appendix 1, Subpart P, Regulations No. 4, at Step Three of the process. (Tr. 18-19). Plaintiff does not challenge the ALJ's determinations at Steps One to Three of the sequential evaluation process.

## II.     Residual Functional Capacity

The ALJ next determined that Turner-Anderson retains the residual functional capacity to perform light work, with occasional overhead reaching; driving; balancing, stooping, kneeling, crouching, crawling, and climbing ramps/stairs, but not ladders, ropes, or scaffolds. (Tr. 19).[3] The ALJ's residual functional capacity assessment is substantially supported by the August 14, 2007, findings of the consultative physician, David Hebert, M.D. (Tr. 341-346). It is further supported, albeit after the fact,[4] by a June 5, 2009, note from plaintiff's treating physician, Randy Head, M.D., wherein he opined that plaintiff had no medical problems that would prevent her

---

[3] Light work entails:
> . . . lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

[4] The evidence is part of the instant record because it was submitted to the Appeals Council and appears to be based on treatment records during the relevant period. *See* Tr. 7, 397-427 and *Higginbotham v. Barnhart*, 405 F.3d 332 (5th Cir. 2005). Furthermore, there is no indication that plaintiff's condition materially changed between the date of the ALJ's decision and Dr. Head's note. In fact, plaintiff asked the Appeals Council to obtain medical records from Dr. Head. (Tr. 8).

from working a 40 hour workweek, without any restrictions. (Tr. 464).[5] Needless to say, plaintiff does not directly contest the ALJ's residual functional capacity assessment.

### III. Steps Four and Five

The ALJ concluded at Step Four of the sequential evaluation process that Turner-Anderson could not perform her past relevant work. (Tr. 20). Accordingly, he proceeded to Step Five. At this step, the ALJ determined that plaintiff was a younger individual, with a limited education, and that transferability of skills was immaterial. *Id*. The ALJ observed that given Turner-Anderson's vocational factors, and with a residual functional capacity for the full range of light work, the Medical-Vocational Guidelines directed a finding of not disabled. 20 C.F.R. § 404.1569; Rule 202.18, Table 1, Appendix 2, Subpart P, Regulations No. 4. (Tr. 20). However, because plaintiff's ability to perform light work was reduced by further limitations, the ALJ employed vocational expert testimony to conclude that plaintiff could make an adjustment to other work that exists in substantial numbers in the national economy. (Tr. 20-21).[6]

### IV. Waiver of Right to Counsel

Social security claimants have a statutory right to counsel at any social security hearing. 42 U.S.C. § 406 (2003). Furthermore, a claimant is entitled to receive adequate notice of her right to counsel at an administrative hearing. *Castillo v. Barnhart*, 325 F.3d 550, 552 (5th Cir.

---

[5] He added that Turner-Anderson had requested a sitter to help her around the home. *Id*. Dr. Head told her to get a job, and if she wanted a sitter, she could pay for one herself. *Id*.

[6] The vocational expert identified three representative jobs at the light or sedentary exertional level: school bus monitor, DOT Code 372.667-042, with 130 jobs in the state economy; fast food worker, DOT Code 311.472-010, with 5,600 jobs at the state level; and telephone quotation clerk, DOT Code 237.367-046, with 1,250 jobs at the state level. (Tr. 39-40). These jobs constitute a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson v. Chater*, 108 F.3d 178, 181 (8th Cir. 1997) (200 jobs at state level and 10,000 nationally, constitute a significant number).

2003) (citing *Brock v. Chater*, 84 F.3d 726, 729 (5th Cir. 1996). "Adequate notice" requires that an ALJ apprise the claimant: "(a) how an attorney can assist claimant in the hearing; (b) sources of free counsel and possibility of contingency arrangements; and (c) limitation of attorney fees to twenty-five percent of past due benefits." *Gullett v. Chater*, 973 F.Supp. 614, 620 (E.D. Tex.1997) (citing *Clark v. Schweiker*, 652 F.2d 399, 403 (5th Cir.1981)).  Once a claimant receives written notice prior to the hearing, "[t]he ALJ should then provide oral notification at the hearing to ensure that a claimant who appears pro se at a hearing has been made aware of the options for obtaining counsel so that her or his waiver is knowingly and intelligently effected." *Id.* at 621 (citing *Frank v. Chater*, 924 F.Supp. 416, 426 (E.D.N.Y.1996)).

In this case, the request for hearing dated December 26, 2007, confirmed that plaintiff understood that she had a right to representation, and that if she needed representation, the social security office could provide her with a list of organizations that could help her locate a representative. (Tr. 55-56).  Furthermore, on January 7, 2008, the Office of Disability Adjudication and Review sent plaintiff a letter explaining to Turner-Anderson that she could choose to be represented by a lawyer or someone else. (Tr. 57-60).  The letter further advised that a representative could help plaintiff:  with evidence, prepare for the hearing, and present her case. *Id*.  The letter also stated that some lawyers charge a fee only if the claimant receives benefits. *Id*.  A list of referral organizations was attached. *Id*.

In an August 19, 2008, Notice of Hearing, the Office of Adjudication and Review again advised plaintiff that she may choose to have someone represent her. (Tr. 62-66).  Also, given plaintiff's numerous prior applications, it is likely that she was well-acquainted with the notices advising her that she enjoyed a right to representation.

On the day of the September 11, 2008, hearing, Turner-Anderson signed a waiver of

representation wherein she stated that she understood her right to representation at the hearing, that she voluntarily waived that right, and that she asked to proceed without a representative. (Tr. 74). She further acknowledged that she received a list of organizations that provide legal services prior to receipt of the Notice of Hearing. *Id*. In addition, the ALJ orally confirmed that Turner-Anderson understood her right to counsel, and that she wished to proceed pro se:

> ALJ: . . . You also have the right to have a lawyer with you and you've signed a waiver saying you don't want one. I wanted you to know that if you need some time to get a lawyer, I'd see that you got that time. If you want to go without one, I'll be happy to take you through and do the best I can. So the choice is yours, what did you want to do?
>
> CLMT: I guess just do what I can do today, whether it –
>
> ALJ: Can you speak up, please?
>
> CLMT: Oh, the – I don't, I don't think I need one. I probably don't need one.
> ALJ: Okay. . . .

(Tr. 27).

Under the circumstances, the court finds that plaintiff validly consented to proceed without representation. *See Castillo, supra*.

Of course, when a claimant is unrepresented at the hearing, the ALJ's obligation to fully and fairly develop the record gives rise to a special duty to "scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts." *Kane v. Heckler*, 731 F.2d 1216, 1220 (5th Cir. 1984) (citations omitted). The ALJ's failure to develop an adequate record, however, does not automatically compel reversal. *Id*. Rather, "[a]s in the case of a hearing held without waiver of the right to counsel, the claimant must, in addition, show that she was prejudiced as a result of [sic] scanty hearing. She must show that, had the ALJ done his duty, she could and would have adduced evidence that might have altered the result." *Kane supra* (internal

In the case *sub judice*, plaintiff contends that counsel could have made a difference at the hearing by posing additional hypotheticals to the vocational expert. Plaintiff contends that counsel could have elicited testimony from the vocational expert to the effect that a certain percentage of the jobs that the vocational expert identified in response to the ALJ's hypothetical were part-time, rather than full-time. For instance, plaintiff argues that in 2008, 55 percent of school bus monitor jobs, 44 percent of fast food positions, and 31.7 percent of telephone quotation clerk jobs were part-time. (Pl. Brief, pg. 8). However, even if the ALJ had reduced the incidence of jobs by the foregoing percentages, that leaves 58 school bus monitor jobs, 3,136 fast food worker positions, and 850 telephone quotation clerk jobs in the regional economy. These jobs still constitute a significant number of jobs in the "national economy." 42 U.S.C. § 423(d)(2)(A); *Johnson, supra*.

Plaintiff further argues that counsel could have posed additional hypotheticals to the vocational expert that assumed a claimant with additional limitations than the residual functional capacity ultimately adopted by the ALJ. However, a hypothetical need only reasonably incorporate the disabilities and limitations recognized by the ALJ. *Bowling v. Shalala*, 36 F.3d 431 (5th Cir. 1994). Here, the ALJ's hypothetical to the vocational expert incorporated all of the limitations recognized in his residual functional capacity assessment, and that assessment is supported by substantial evidence, and not directly challenged by plaintiff. *See* discussion, *supra*. Thus, any further hypotheticals that assumed a more restrictive residual functional capacity would have proved immaterial and superfluous.

In sum, plaintiff has not demonstrated that she was prejudiced by her decision to proceed, without counsel, at the hearing, or relatedly, as a result of the ALJ's alleged failure to fully and fairly develop the record.

## Conclusion

For the foregoing reasons, the undersigned finds that the Commissioner's determination that plaintiff was not disabled under the Social Security Act, is supported by substantial evidence and remains free of legal error. Accordingly,

**IT IS RECOMMENDED** that the Commissioner's decision to deny disability benefits be **AFFIRMED**, and that this civil action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **fourteen (14) days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **fourteen (14) days** after being served with a copy thereof. A courtesy copy of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN FOURTEEN (14) DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED in chambers, at Monroe, Louisiana, this 8th day of December 2011.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE